FILED

FEB 0 7 2013


CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|                              |   |                           |
|------------------------------|---|---------------------------|
| GUILLERMO ORTIZ,             | * | CIV 12-4092               |
|                              | * |                           |
| Petitioner,                  | * |                           |
|                              | * |                           |
| vs.                          | * | **REPORT and RECOMMENDATION** |
|                              | * |                           |
| UNITED STATES OF AMERICA,    | * |                           |
|                              | * |                           |
| Respondent.                  | * |                           |
|                              | * |                           |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Guillermo Ortiz (also known as "Memo") filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1). He has also filed a Memorandum in Support (Doc. 2) a Motion for Summary Judgment (Doc. 14); and a Memorandum of Law in Support of Traverse (Doc. 20). Also pending is Ortiz's Motion to Include Additional Affidavit (Doc. 24).[1] The Government has filed a Motion to Dismiss (Doc. 19) a Response (Doc. 17) and an Answer to Supplemental Motion (Doc. 28) to Ortiz's Motion to Vacate, Set Aside, Or Correct Sentence. For the reasons stated below, it is respectfully recommended to the District Court that Ortiz's Motion to Vacate (Doc. 1) and Motion for Summary Judgment (Doc. 14) be **DENIED** and the Government's Motion to Dismiss (Doc. 19) be **GRANTED.**

## JURISDICTION

This matter is properly pending before the District Court pursuant to 28 U.S.C. § 2255. The Motion has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's standing Order dated March 18, 2010.

---

[1]The Motion to Include the Affidavit (Doc. 24) is GRANTED and the Affidavit attached to Doc. 24 has been considered.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2006, Ortiz pled guilty in state court to possession with intent to distribute a controlled substance. He was incarcerated from August, 2006 until August, 2007. Ortiz's 2006 drug conviction was the result of an investigation by Sioux Falls law enforcement which revealed that Ortiz was distributing methamphetamine in the Sioux Falls area. As part of the 2006 investigation, Ortiz's home was searched. Among the incriminating evidence found were drug paraphernalia, scales, and a set of sales ledgers. Some of the entries in the sales ledger implicated Dustin Call, Ortiz's co-worker at a concrete paving company.

Ortiz was arrested again in April, 2010. He was federally charged in a one count Indictment in May, 2010 with Conspiracy to Distribute a Controlled Substance (Methamphetamine) in violation of 21 U.S.C. § 841(a)(1) and 846.[3] The Indictment charged that "from on or about 2005, and continuing to the date of this Indictment Guillermo Ortiz, a/k/a "Memo" did knowingly and intentionally combine, conspire, confederate, and agree together with others known and unknown to the Grand Jury, to knowingly and intentionally distribute 500 grams or more of a mixture and substance containing methamphetamine . . ." Ortiz retained Attorney Clint Sargent to represent him on the federal charges. Ortiz's case went to trial in November, 2010. On November 4, 2010, a jury found Ortiz guilty of the single count in the Indictment.

Several witnesses testified during Ortiz's November, 2010 trial. Dustin Call testified that in 2005, he met Ortiz through a fellow employee (Pantaleon) at a paving company. At the time, Call

---

[2]The facts are gleaned from the record in the underlying criminal case as well as Ortiz's direct appeal to the Eighth Circuit Court of Appeals. *United States v. Ortiz*, 451 Fed. Appx. 634 (8th Cir. 2012). *See, Hood v. United States*, 152 F.2d 431 (8th Cir. 1946) (federal District Court may take judicial notice of proceedings from another federal District Court); *Matter of Phillips*, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); *Green v. White*, 616 F.2d 1054 (8th Cir. 1980) (Court of Appeals may take judicial notice of District Court filings).

[3]The conviction which resulted from this Indictment is the subject of the instant Motion to Vacate.

was receiving methamphetamine from Pantaleon. Eventually in 2005, Call began receiving methamphetamine from Ortiz. Call both used the methamphetamine himself, and sold it to others. In 2009, Ortiz came back to work at the paving business. After Ortiz came back to work at the paving business, Ortiz told Call he wanted to "get involved" again, and invited Call to do the same. Call initially declined, but later changed his mind in the summer of 2009 when he needed the money. Call preferred to receive methamphetamine in ounce quantities from Ortiz, although Ortiz encouraged Call to take a pound at a time, because Ortiz did not like to break it up. Call estimated he received and resold a total of six ounces of methamphetamine from Ortiz during 2009.

Carlos Clemente Pantaleon, Jose Rodriguez Narez, and Rene Ronsberg also testified about their involvement with Ortiz's methamphetamine activities before his 2006 incarceration.[4] Pantaleon testified that he and Ortiz were involved in a drug transaction together in 2005. Jose Rodriguez Narez testified that he and Ortiz sold methamphetamine together in 2005.[5] Ronsberg was arrested in 2005 as a result of a controlled buy in which Ortiz was the supplier of methamphetamine.

Juan Maldonado met Ortiz while the two were incarcerated together in 2006-2007. They discussed their respective histories of drug use. Upon Maldonado's release from prison in 2008, he began selling methamphetamine. In 2009, Maldonado located Ortiz in hopes recruiting him as a drug customer. Ortiz did not buy methamphetamine from Maldonado, but did introduce Maldonado to Troy Rubin, who did become Maldonado's customer. Eventually, both Rubin and Maldonado bought methamphetamine from Ortiz.[6] Troy Rubin was Ortiz's co-worker in 2009. Rubin asked

---

[4]Pantaleon and Narez and were arrested on federal drug charges in 2008. Both received sentence reductions for their cooperation.

[5]The evidence at trial was that Ortiz received more than 2,000 grams of methamphetamine for distribution during 2005.

[6]Maldonado testified he received four pounds of methamphetamine from Ortiz for distribution. Rubin testified he received at least eight and a half pounds of methamphetamine from Ortiz for distribution.

Ortiz about obtaining methamphetamine, and Ortiz introduced Rubin to Maldonado. Rubin bought methamphetamine from Maldonado for about a month, but when Maldonado disappeared[7], Rubin began buying from Ortiz. Rubin brought in a friend (Miles Sandquist) because Ortiz was supplying more methamphetamine that Rubin could distribute alone.[8]

Ortiz appealed his federal conviction. On appeal, Ortiz raised two issues: (1) There was a variance between the Indictment which charged a single conspiracy and the evidence presented at trial, which Ortiz contended showed only multiple conspiracies; and (2) A supplemental jury instruction given by the Court prejudiced the verdict or alternatively, constructively amended the Indictment.[9] The Eighth Circuit Court of Appeals rejected both arguments and affirmed Ortiz's conviction. *United States v. Ortiz*, 451 Fed. Appx. 634 (8th Cir. 2012) .

On May 17, 2012, Ortiz filed this Motion to Vacate, Set Aside or Correct Sentence. Ortiz raises seven[10] grounds for relief:

1. **Trial Counsel Was Ineffective For Failing To Argue The Wharton Rule**

2. **Trial Counsel Was Ineffective For Failing To Show The Difference Between**

---

[7]Maldonado was arrested in October, 2009 as a result of a controlled buy. He was first charged with state drug charges, and eventually with federal drug charges.

[8]Maldonado and Rubin were both indicated on federal drug charges in early 2010. Both received sentence reductions for their cooperation.

[9]The jury submitted two questions during deliberations, asking for clarification of the dates of Ortiz's incarceration and a definition of 'continuing" in the phrase "from or about 2005, and continuing through May 2, 2010." In response, the district court listed the dates of Ortiz's incarceration and issued the following supplemental jury instruction:

> The dictionary definition of "continuing" is 'continuous, constant, needing no renewal, lasting or enduring.'

> In a criminal case, the government is not required to prove that Mr. Ortiz was involved in a conspiracy that filled the entire period charged.

[10]The seventh ground was raised in Ortiz's Motion to Amend (Doc. 21).

"Conspiracy To Possess" And "Conspiracy To Possess With Intent To Distribute" A Controlled Substance

3.      The Court Gave The Jury An Inappropriate Anti-Deadlock Charge When It Instructed The Jury It Could Only Acquit Or Find Guilt If It Split On Issues Regarding Multiple Or Separate Conspiracies

4.      Counsel Was Ineffective For Not Arguing That The "Intent" Was Not Shown Regarding Petitioner's "Possession" Of The Controlled Substance

5.      Counsel Was Ineffective For Not Arguing For A Buyer/Seller Jury Instruction

6.      Scientific Proof That the Substance Alleged At Trial Was A Controlled Substance Triggering The Provision Of The Statute Was Never Presented To The Jury To Support The Jurors Finding Of Guilt

7.      Counsel Was Ineffective For Failing To Advise Petitioner Of The Option To Consider Acceptance Of A Plea Agreement

## DISCUSSION

### 1.      Burden of Proof

In general, to state a claim for relief under 28 U.S.C. § 2255, a federal prisoner must prove one of the following: (1) his sentence was imposed in violation of the laws or Constitution of the United States; (2) the sentencing Court did not have jurisdiction to impose sentence; (3) his sentence exceeded the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *Hill v. United States*, 368 U.S. 424, 426-27, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to relief in cases involving collateral attack on a criminal conviction. *Skinner v. United States*, 326 F.2d 594, 597 (8th Cir. 1964).

### 2.      Principles Generally Applicable to § 2255 Petitions

The federal habeas corpus remedy found at 28 U.S.C. § 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). A § 2255 cause of action is intended to correct an error which rises to the level of a "fundamental defect" which "inherently results in a complete

miscarriage of justice." *Hill*, 368 U.S. at 427, 82 S.Ct. at 471.

Additionally, a collateral attack pursuant to § 2255 is not interchangeable or substitutable for a direct appeal. *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). In other words, a petitioner is usually precluded from asserting claims in a § 2255 motion that he has failed to raise on direct appeal. *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousely v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citations omitted).

Conversely, claims which were raised but rejected on direct appeal may not be re-litigated in a § 2255 petition. *United States v. McGee*, 201 F.3d 1022 (8th Cir. 2000); *United States v. Wiley*, 245 F.3d 750 (8th Cir. 2001). Ineffective assistance of counsel claims, however, are generally not cognizable on direct appeal and are properly addressed in a § 2255 motion. *United States v. Looking Cloud*, 419 F.3d 781, 788-89 (8th Cir. 2005). No procedural default analysis, therefore, is necessary before analyzing ineffective assistance claims.

To successfully maintain a claim for ineffective assistance of counsel, a habeas petitioner must prove his counsel's performance was deficient and that he suffered prejudice as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2052. Because hindsight analysis is problematical, courts "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005). Decisions involving trial strategy are therefore "virtually unchallengeable." *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006). Decisions of trial counsel about whether to call a witness are included in the ambit of trial strategy. *Staples*, 410 F.3d at 488. It is with these general principles in mind that the claims contained in Ortiz's § 2255 Petition have

been considered.

3.     **Analysis**

   A.     **First Ground For Relief:  Trial Counsel Was Ineffective For Failing To Argue The Wharton Rule**

The Eighth Circuit recently explained Wharton's Rule:

> Wharton's Rule, which operates as a narrow exception to the general principle that a conspiracy and its underlying substantive offense do not merge, applies where there is a 'general congruence of the conspiracy agreement and the completed substantive offense.' This 'general congruence' exists when 'the parties to the agreement are the only persons who participate in the commission of the substantive offense . . .the immediate consequences of the crime rest on the parties themselves rather than on society at large,' and when 'the agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to avert.'

*United States v. Hines*, 541 F.3d 833, 838 (8th Cir. 2008) (punctuation altered, citations omitted).


In his Affidavit (Doc. 9) Ortiz's trial counsel indicated the trial strategy in Ortiz's case was to highlight the break in activity between the two periods of methamphetamine involvement and argue there was no single continuing conspiracy. *Id.* at ¶7. Trial counsel communicated and recommended this strategy to Ortiz, who accepted trial counsel's advice. Trial counsel did not argue the Wharton Rule because making such an argument would not have been consistent with trial strategy. *Id.* at ¶ 8. Decisions involving trial strategy are virtually unchallengeable. *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006). The evidence at trial established that Ortiz sold methamphetamine to his customers, who in turn sold it to others. The Wharton Rule, therefore does not apply and Ortiz can show neither the deficiency nor the prejudice prong of the *Strickland* test.


   B.     **Second Ground For Relief:  Trial Counsel Was Ineffective For Failing To Show The Difference Between "Conspiracy to Possess" And "Conspiracy To Possess With Intent To Distribute" A Controlled Substance**

The single count of the Indictment charged Ortiz with Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. In his affidavit, trial counsel explained

that he did not argue the distinction between conspiracy to possess with intent to distribute and conspiracy to possess a controlled substance because "it would not have been consistent with the trial strategy . . . [and] such an argument would have little chance of success in light of the Government's evidence." *See* Doc. 9 at ¶ 9.

Ortiz asserts "there was evidence of single sales by persons known by others but . . . a single sale for personal use of purchaser does not establish conspiracy and mere presence or association alone are not sufficient to prove participation in conspiracy." Ortiz further theorizes that his trial counsel should have realized the Government was "presenting personal use possession issues under a conspiracy theory, creating a 'conspiracy to posses' statute violation under 846."

The evidence at trial, however, did not support Ortiz's personal use possession theory. The evidence at trial overwhelmingly suggested that Ortiz distributed large amounts of methamphetamine[11] to several different individuals, who in turn sold the drug to others. Trial counsel's strategy to attempt to show the Government's evidence proved two or more separate conspiracies rather than a continuous conspiracy was reasonable. That the strategy was ultimately not successful does not render counsel's assistance ineffective. *Flieger v. Delo*, 16 F.3d 878, 886 (8th Cir. 1994) ("trial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful."). For all of these reasons, Ortiz's Second Ground for Relief should be rejected.

---

[11]The large amounts the witnesses testified were distributed by Ortiz–often a pound at a time–were consistent with amounts intended for distribution and inconsistent with amounts intended for personal use. *See United States v. Wiggins* 104 F.3d 174 (8th Cir. 1997) (receipt of large quantities of drugs is evidence of intent to distribute rather than a single buy-sell relationship); *United States v. Manes*, 603 F.3d 451, 458 (8th Cir. 2010) (quantity of methamphetamine involved independently supported conclusion defendant intended to distribute it).

**C.**   **Third Ground For Relief: The Court Gave The Jury An Inappropriate Anti-Deadlock Charge When It Instructed The Jury It Could Only Acquit Or Find Guilt If It Split On Issues Regarding Multiple Or Separate Conspiracies**

In this ground for relief, Ortiz asserts the trial court erred when it gave Instruction No. 21, which stated:

(1) The indictment charges that the defendant was a member of one single conspiracy to commit the crime of distributing 500 grams or more of a mixture and substance containing methamphetamine.

(2) One of the issues you must decide is whether there were really two or more separate conspiracies—one between Guillermo Ortiz, Carlos Clemente Pantaleon, Jose Rodriguez Narez and Renee Ronsberg to commit the crime of conspiracy to distribute methamphetamine, and one between Guillermo Ortiz and Dustin Call to commit the crime of conspiracy to distribute methamphetamine, and another between Guillermo Ortiz, Juan Maldonado, Troy Rubin, Shelly Bryan, Myles Sandquist, David Dale, and Shea Reiners to commit the crime of conspiracy to distribute methamphetamine.

(3) The Government must convince you beyond a reasonable doubt that the defendant was a member of the single conspiracy charged in the Indictment. If the government fails to prove this as to the defendant, then you must find the defendant not guilty of the conspiracy charge, even if you find that he was a member of some other conspiracy. Proof that the defendant was a member of some other conspiracy is not enough to convict.

(4) But proof that the defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict, if the government also proved that he was a member of the conspiracy charged in the indictment.

Ortiz asserts Instruction No. 21 was an "inappropriate anti-deadlock" charge, and that it led to the possibility the jury might not be unanimous about which conspiracy formed the basis of the single conspiracy required to convict. This ground for relief fails for a couple of reasons. First, although Ortiz challenged the supplemental jury instruction on direct appeal, he failed to specifically challenge Instruction No. 21 on direct appeal. "[I]mproper jury instructions are not cognizable in a § 2255 proceeding." *Monteer v. Benson*, 574 F.2d 447, 449 (8th Cir. 1978). *See also Merrill v. United States*, 599 F.2d 240, 243 (8th Cir. 1979) (improper jury instruction not cognizable in a § 2255 proceeding unless it is of 'constitutional magnitude' or 'inherently results in a complete miscarriage

of justice.').

Second, although Ortiz did not challenge Instruction No. 21 on direct appeal, in its opinion the Eighth Circuit discussed Ortiz's multiple-conspiracy theory, along with the instruction and the sufficiency of the evidence to support the jury's guilty verdict:

> The jury received a detailed instruction on Ortiz's multiple-conspiracy theory, and we must presume the jury followed the instructions conscientiously and evaluated the evidence carefully. While other conclusions also may have been possible, our review of the record, in the light most favorable to the verdict, indicates that it was reasonable for the jury to conclude that a single conspiracy existed. As a result, we reject Ortiz's claims that the evidence was insufficient to support the verdict and that a variance occurred.

*United States v. Ortiz*, 451 Fed. Appx. 634 at *3. Claims which have been rejected on direct appeal may not be re-litigated in a § 2255 petition. *United States v. McGee*, 201 F.3d 1022 (8th Cir. 2000); *United States v. Wiley*, 245 F.3d 750 (8th Cir. 2001).[12]    For all of these reasons, Ortiz's Third Ground For Relief should be rejected.

**D.    Fourth Ground For Relief:  Counsel Was Ineffective For Not Arguing That The "Intent" Was Not Shown Regarding Petitioner's "Possession" Of The Controlled Substance**

In this section of his Motion, Ortiz asserts his trial counsel should have argued Ortiz lacked the mental capacity required to form the requisite intent to distribute methamphetamine because of Ortiz's own addition to the drug or alternatively, that the Government failed to prove anything other than Ortiz was a user of methamphetamine.[13]    In his Affidavit (Doc. 9) trial counsel indicated he did not make such an argument because "it would not have been consistent with the trial strategy

---

[12]Additionally, Ortiz's claim that the jury may not have unanimously agreed about which conspiracy was the single conspiracy required to convict is likewise rejected. The Eighth Circuit noted that the jury is "presumed to have followed the instructions conscientiously and evaluated the evidence carefully." *United States v. Ortiz*, 451 Fed. Appx. 634 at *3. Instruction No. 24 required a unanimous verdict.

[13]Based on the authorities cited above, the quantity of methamphetamine attributed to Ortiz as described by the trial witnesses belies his claim that intent to distribute was not supported by the evidence.

[and] would have little chance of success in light of the Government's evidence." *Id.* at ¶ 10.

"Mere addiction to drugs is not a defense to charges of conspiracy to distribute and possession with intent to distribute." *United States v. Griffin*, 909 F.2d 1222, 1224 (8ᵗʰ Cir. 1990). Because the Eighth Circuit has squarely rejected Ortiz's proposed theory, his trial counsel's performance was not deficient and Ortiz suffered no prejudice by counsel's failure to present the theory at trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For these reasons, Ortiz's Fourth Claim for Relief should be rejected.

### E.   Fifth Ground For Relief:  Counsel Was Ineffective For Not Arguing For A Buyer/Seller Jury Instruction[14]

In this section of his Motion, Ortiz asserts his counsel was ineffective for failing to propose a buyer/seller jury instruction. In his Affidavit (Doc. 9), trial counsel indicates "no such argument was made because it would not have been consistent with trial strategy [and] would have little chance of success in light of the Government's evidence." *Id.* at ¶ 11.

"A defendant is entitled to an instruction explaining his defense theory if the request is timely, the proffered instruction is supported by the evidence, and the instruction correctly states the law." *United States v. Hester*, 140 F.3d 753, 757 (8ᵗʰ Cir. 1998). In his Motion, Ortiz suggests his counsel was ineffective for not proposing a jury instruction that would have stated "the relationship between a buyer and seller of drugs does not alone establish a conspiracy." *See e.g. United States v. Prieskorn*, 658 F.2d 631 (8ᵗʰ Cir. 1981).

During the trial, at least eight witnesses testified about Ortiz's methamphetamine distribution activities. The Eighth Circuit made it clear in *Hester*, however that "the [buyer/seller] instruction is not appropriate when there is evidence of multiple drug transactions, as opposed to a single,

---

[14]This issue is listed in Ortiz's Motion (Doc. 1) and in the table of contents at p.5 of his Memorandum (Doc. 2) but is not discussed in the body of the Memorandum. The Government addressed the issue in its Response (Doc. 18).

11

isolated sale." *Hester, id.* at 757. In Ortiz's case, as in *Hester* the evidence did not support the buyer/seller instruction because "no reasonable juror could have believed that he was in a mere one time buyer/seller relationship." *Id.*

Because the Eighth Circuit has squarely rejected Ortiz's proposed theory, his trial counsel's performance was not deficient and Ortiz suffered no prejudice by counsel's failure to present the theory at trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). For these reasons, Ortiz's Fifth Claim for Relief should be rejected.

F.     **Sixth Ground For Relief:  Scientific Proof That The Substance Alleged At Trial Was A Controlled Substance Triggering The Provision Of The Statute Was Never Presented To The Jury to Support The Jurors Finding Of Guilt**

In this section of his Motion, Ortiz alleges the Government failed to establish at trial that the substance distributed was methamphetamine. Ortiz asserts that because a chemist did not testify to identify any of the substances which were the subject of the charge against him were in fact methamphetamine, the Government failed to prove its case beyond a reasonable doubt.   This argument fails for several reasons.

First, it was not raised on direct appeal. A petitioner is  precluded from asserting claims in a § 2255 motion that he has failed to raise on direct appeal. *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). Ortiz's claim is, at its core, challenging the sufficiency of the evidence. Claims challenging the sufficiency of the evidence are not cognizable in a § 2255 Motion to Vacate. *United States v. Norton,* 539 F.2d 1194, 1195 (8th Cir. 1976); *Houser v. United States*, 508 F.2d 509, 516 (8th Cir. 1974).

Most importantly, Ortiz's claim that the Government failed to prove the substances distributed were not chemically tested or verified to be methamphetamine is incorrect. Although a chemist did not testify at trial, the parties stipulated to the chemist's findings, and the stipulations were received into evidence. *See* Trial Transcript at 202, 208, and 210 and Government EX 12 and

20, *United States v. Ortiz*, CR 10-40047. For all of these reasons, Ortiz's Sixth Claim for Relief should be denied.

### G. Seventh Ground For Relief: Counsel Was Ineffective For Failing To Advise Petitioner Of The Option To Consider Acceptance Of A Plea Agreement

Ortiz's final claim for relief (added pursuant to his Motion to Amend, Doc. 21) asserts trial counsel was ineffective for "failure to advise the Petitioner of the option to consider acceptance of a plea agreement, which is a counsel's duty . . ." In his Supplemental Affidavit (Doc. 23) trial counsel explained that "Mr. Ortiz maintained throughout . . .that he never engaged in a conspiracy to distribute or possess with intent to distribute a controlled substance. He maintained this position even after he was convicted at trial." *Id.* at ¶ 4. Trial counsel also recalled that "the Government did not ever make a plea offer to Mr. Ortiz. The Government did send a . . .proffer letter on May 19, 2010, which I reviewed with Mr. Ortiz. Mr. Ortiz was adamant throughout my representation of him that he did not want to proffer or cooperate with the Government." *Id.* at ¶ 6. Counsel for the Government confirmed that no plea deal was ever offered to Ortiz. *See* Doc 28, p. 3.

Ortiz submitted his own affidavit (attached to Doc. 24) to support his assertion that his trial counsel was ineffective for failing to adequately advise of a plea offer. In his Affidavit, Ortiz explains that he communicated with his retained counsel through interpreters. Ortiz explains that his counsel "did once propose that a solution would be to tell all and my response was positive, but since the drugs being distributed were not mine, what was I to say?" Doc. 24, p. 1 (punctuation altered). Ortiz claims he "wanted to tell [his] side but because of communication barriers and counsel's overconfidence, the debriefing never materialized." *Id.* at p.2

Applying the *Strickland* standard to a lawyer's communication of the advisability of a plea deal versus going to trial, the Eighth Circuit has explained "prejudice is possible, notwithstanding a subsequent fair trial, where counsel failed to provide accurate advice regarding a plea agreement offer." *Kingsbury v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000) (citations omitted). Logic dictates, however, that "the petitioner must begin by proving that a plea agreement was formally

offered by the government." *Id.* Ortiz has failed to prove a plea agreement was formally offered. Ortiz does not claim a plea offer was made, and the Government and Ortiz's counsel have explicitly denied a plea offer was made.

Further, even accepting as true Ortiz's claim that he would have participated in a proffer absent a communication breakdown between himself and counsel, he has nevertheless failed to show prejudice. Ortiz's Affidavit indicates that even now, he denies involvement in methamphetamine distribution ("but since the drugs being distributed were not mine, what was I to say?"). A proffer, therefore, would have been fruitless. *See United States v. Stevens,* 149 F.3d 747, 748 (8th Cir. (rejecting claim trial counsel was ineffective for failing to advise defendant of advantages of a guilty plea, where defendant continued to maintain his innocence even after trial); *United States v. Hyles,* 521 F.3d 946, 953 (8th Cir. 2008) (proffer letter requires information provided by defendant to be truthful, candid and meritorious). For all of these reasons, Ortiz's Seventh Ground For Relief should be denied.

## EVIDENTIARY HEARING AND CERTIFICATE OF APPEALABILITY

If the motion, files and records of the case conclusively establish that the Petitioner is not entitled to relief, the Court is not required to conduct an evidentiary hearing. *Garcia v. United States,* 679 F.3d 1013, 1014 (8th Cir. 2012). There is no need for an evidentiary hearing in this case because it is clear from the record that the motion that Ortiz has not raised a claim cognizable under 28 U.S.C. § 2255.

When the district court has denied a motion under 28 U.S.C. § 2255, the movant may not appeal without a certificate of appealability. Such a certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if a "court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris,* 133 F.3d 565, 569 (8th Cir.

14

1997). Ortiz has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability should likewise be denied.

## CONCLUSION, ORDER and RECOMMENDATION

1.  For the reasons more fully explained above, it is **ORDERED** that Petitioner's Motion to Amend **(Doc. 24)** is **GRANTED**.

2.  It is respectfully **RECOMMENDED** to the District Court that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence **(Doc. 1)** and his Motion for Summary Judgment **(Doc. 14)** be **DENIED**;

3.  It is further **RECOMMENDED** that the Government's Motion to Dismiss **(Doc. 19)** be **GRANTED.**

4.  It is further **RECOMMENDED** that no certificate of appealability be issued.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this __7__ day of ~~January~~ *Feb*, 2013.

BY THE COURT:

John E. Simko
United States Magistrate Judge

15